The court will proceed to the third case, Grippy v. Henkel Corporation. Mr. Mulvaney. May it please the Court. My name is Doug Mulvaney, and I represent the plaintiffs Greg Cripe and his wife Tammy Cripe. On November 17, 2010, Greg Cripe was exposed to toxic fumes created by a heated adhesive that was manufactured and distributed by the defendant, Henkel Corporation, in this case. As a result, he had extensive physical and psychological problems. The issue before this Court is whether because you just said, as a result, he had particular problems. But the district judge found that there was no evidence of causation in the record. That's why you lost. You can't assume away the reason why you lost. Right. The reason we lost was that the district court judge excluded plaintiffs treating doctors as expert witnesses in this case. There were five primary treating doctors. Were they ever tendered as expert witnesses? We believe they were, Your Honor, under Rule 26A.2.C. We previously disclosed them as witnesses. We provided written opinion reports from four of the experts to counsel for the defendant as part of a Rule 26 preliminary disclosure on Rule 26. Those written opinions cover causation? The written opinions do cover causation, yes. And how? Well, Dr. Kevin Crystal, who is the neurologist who evaluated a plaintiff, in his report, a written report dated January 12, 2011, gave his opinion that Cripe had a history of toxic exposure, and he stated he was highly suspicious that he had an inset myelopathy that was due or secondary to the exposure with the cyanide and that his symptoms were classic for carbon monoxide cyanide poisoning. Dr. Gary Elliott was in your... No, I haven't heard an answer to my question, how the opinions dealt with the issue of causation. The opinions dealt with the issue of causation by using... You can't put this differently. An expert who just asserts an outcome, that's not even valuable. It's not even admissible. To talk about a particular issue as an expert, you have to reveal the reasoning process and the data that get you from one position to another. So that's why I'm asking how these treating physician reports dealt with the issue of causation. Each of the doctors used a differential ideology, which has been recognized by this circuit, as sufficient to prove both general and specific causation from a medical standpoint. Dr. Kristol, in his opinion letter of January 12th, outlined his examination, testing, review of medical records, review of material safety data sheets. Dr. Elliott did the same thing. Dr. Elliott was in your... Maybe my question just isn't clear. I don't understand how stating reviewed medical records proves causation. Could you explain it to a layperson like me? Well, a doctor doing differential ideology rules in or rules out potential causes of the symptoms that they are seeing. In this case, each of the doctors did that. A physician? A physician. Your expert that you had wasn't a physician, was he? Yes, he was. The person who was tendered as an expert was not a physician. The person who was tendered as an expert was a philologist. Dr. Patricia Robinson was tendered as a retained expert by plaintiff, and pursuant to the section of Rule 26 with retained experts, we provided a written report which covered her opinion as to the adequacy of the warnings and instructions on the substance. At the same time, when we tendered her report, we also filed the specific opinion reports from plaintiff's treating doctors, and we felt that that was sufficient to... Counsel, it's no big secret that you have to give specifically the identity of experts you intend to call, and you didn't do that. We did, Your Honor. We filed the reports. I didn't say filing the reports. I said you didn't say these are the experts that are going to testify, and here's a summary of what they're going to testify to. We acknowledge we did not say in that disclosure... But that's what's required by the rule. We believe that there is authority that other courts, district courts, even within this jurisdiction, have looked at written reports and found that to be a sufficient summary and statement of the matters. I have to say that counsel is trying this case. Did you try the case? I was assisting the lead counsel as my partner, David Stussman. We never went to trial on it because we lost the summary judgment. Well, it's no secret that it's basic that you have to list the expert witnesses and summarize their testimony, and you didn't do that. Well, we thought at the time it was sufficient. There is, however, as you know, the reasonable justification. Okay, can I come back to my question about seeing what the medical treating doctors did? Do any of the reports refer to any medical literature about the empirical studies, about effects of the components of this glue? I believe that, yes, Dr. Pike, who was a pulmonologist who was actually appointed to evaluate plaintiffs by the Indiana Workers' Compensation Board, did reference a study on cyanide exposure as part of his report. He also did a complete evaluation and a differential etiology to come up with his opinion on it. And what did he say about that study? What do you think that study establishes? He felt that the study, while it was not the exact same chemical, was sufficient in his mind. Different chemical, okay. It's the same chemical family, not the precise chemical involved in this situation. We felt that the summaries that were provided by the testifier Were there any animal studies with respect to this chemical? Or these chemicals? Not that we're aware of. And I think this gets into the Daubert issue. Any studies at the population level? That is, people exposed to this have a different probability of certain results than others? Studies of that kind? Not that we're aware of. Okay. We were relying on the medical doctors' differential etiology to prove causation in this case. In other words, if I understand that correctly, you're just relying on their say-so. They didn't have any evidence. Under the current precedent in this circuit, differential etiology is enough to prove causation or at least present a question. Could you explain to me how that phrase differs from it's my say-so? Well, I think the questions you are raising are part of the Daubert examination. Daubert was not raised as an issue in this case until you... Could you explain to me how that phrase differs from it's my say-so, but I'm not otherwise explaining? A doctor performs a differential etiology, ruling in and ruling out, and comes up with their best opinion... In other words, it's my say-so, but I'm not explaining. Is there anything else there? That's what I'm trying to get at. Assuming we treat these as expert opinions, even though they weren't so identified, what's there? That's what I'm trying to figure out. All we had at that point was the doctor's evaluation, history taken, and his opinion based on what his area of expertise showed. Did you ever ask any of these treating doctors to testify? There was never an opportunity to have them testify. The defendant did not choose to depose any of them, even though we had served the opinion reports on them. When we went to summary judgment, the only issue before the court was whether or not, if the doctors are excluded, whether summary judgment would be granted. The judge excluded that. And we believe that the exclusion of these experts by the district court was erroneous, because the district court had other options available. In fact, the district court in this case proposed a solution to us at the summary judgment hearing, which would have called for the trial being reset for three months, have us redisclose or do a more full disclosure of the expert testimony, give the defendant opportunity to depose the experts,  would be needed before the trial. And that was certainly discussed at the summary judgment hearing. We had no opposition to it. And for whatever reason, the district court judge in this case elected not to and simply totally excluded the expert witnesses when there were other options available. There were other sanctions that would have been less severe, because obviously in this case the sanction of exclusion terminated the case on the merits right then and there. And certainly the trial judge in this case should have done a better analysis in terms of whether it was analyzing the four factors that determines whether the failure to properly disclose the witnesses was justified or harmless. And that is the prejudice or surprise here. Defense counsel knew about these witnesses, knew they were experts, knew they were treating doctors. I didn't know they were experts. They knew they were treating doctors. Well, the district court, I think, questioned the defense counsel at the summary judgment hearing, and he as much admitted that he knew that they would most likely be testifying as experts in the case. Well, that's why I ask if you ever ask them to testify. They would have. Potentially. We would have asked them to testify, absolutely. I understand that. But one of the reasons you didn't listen is because my guess is you hadn't asked them to testify. We weren't even at that. We were not even at the point of doing that because the summary judgment came up and we clearly would have called them to testify. You hit the point where you had to identify your experts and provide a summary of their testimony, right? Correct. And you didn't do it. We believe that we did with the reports that we filed with the court and served on counsel for defendant on September 1, 2015. I will reserve the balance of my time unless you have any further questions. All right. Thank you, Mr. Maldonado. Thank you. Mr. Farcigian. Thank you, Your Honor. Your Honor, the outcome in this case was not because of any legal error or abuse of discretion by the district court. The Kripes failed to comply with the most basic requirement of Rule 26. They failed to identify any physician as an expert on causation, even though they knew they needed one and they had ample opportunity to do so. We're not talking about some obscure rule of federal civil procedure. We're not talking about some overly technical reading of the rules. The cases are uniform that the federal rules demand formal designation of experts separately from fact witnesses. And these expert disclosure requirements of Rule 26 are an integral part of the overall rule's goal of securing the just, speedy, and inexpensive determination of actions. The district court was within its discretion and, in fact, was really obligated to enforce the rules in this case. As the court pointed out, the supplemental appendix, which is the entirety of the appellant's expert disclosure, gives no indication whatsoever that anyone other than Patricia Robinson, the warnings expert, was being designated as an expert in this case. It contains one expert report. The exhibits that were attached to the report were designated in the docket as medical records relied on by expert, and they were mixed in with other non-medical records. There is nothing in the document that would suggest to anyone that the medical records were being separately designated as experts. And the district court's determination that the Cripes failed to comply with Rule 26 was supported by the record and is correct. I'd like to address some of the questions that were asked to appellate counsel. First of all, this is not a Daubert issue. This was a summary judgment motion, and on summary judgment, the non-moving party has the burden of coming forward with admissible evidence to defeat summary judgment. They needed to show that they had admissible evidence that shows causation, and they failed to do that. With respect to the issue about whether there is a physician, there are no studies, animal or human, that have concluded that this chemical causes neurological or psychological injuries like those that have been alleged by Mr. Cripe. And the one study that was referenced in the report of Dr. Pike has been discredited in the very materials that were provided by Dr. Robinson. And in the record at page 152, the World Health Organization says that the small sample size, possible selection bias for workers involved in litigation, possible confounding factors, lack of pertinent matched controls, lack of objective exposure data, and lack of knowledge on mechanism preclude the credibility of findings. This is the World Health Organization's description of that study in the materials provided by Ms. Robinson. So, Your Honor, in closing, I would like to echo the words of the district judge. There's a point at which you say enough is enough. Five years, multiple extensions, and no justification whatsoever for the failure to disclose. Enough is enough. The judgment should be affirmed. Thank you. Mr. Mulvaney. Thank you. The only question that was properly before the district court was whether or not we presented a genuine issue of material fact. We believe we presented that with the medical reports, the written opinion reports from plaintiff's treating experts. The issue of whether they would be admissible under Daubert would have been or should have been reserved for another day. At this point, we certainly felt that we had submitted the reports properly under Rule 26A2C, and even if it had not been properly submitted, that there was justifiable reason for that, that the defendant had the reports, knew that they were treating doctors, knew that they would most likely be called as experts, and the district court chose the most extreme sanction available, excluding them, knowing that that would completely terminate Mr. Kruip's case. We would ask that court reverse the decision of the court and remand it back to the district court for further proceedings. Thank you. Thank you, Mr. Mulvaney. Thank you, Mr. Parsegian. The case is taken under advisement.